not having discovered the fact that this branch was rotten and not having removed the same. Upon the trial, after the production of the evidence for the plaintiff, the court granted a nonsuit, and of this nonsuit the plaintiff here complains.

It is alleged in the complaint that the defendant owed the duty of reasonable care to those passing along the street, to guard them from injury occurring from rotten branches of trees situated in the street. This duty is admitted in the answer. The nonsuit was granted, apparently upon the ground that the defendant had no notice of this defective condition of this branch for a sufficient time to impose upon it the duty to remove the same. From the evidence it appears that this branch broke from the tree at the trunk; that it was filled with dry rot; that it had no leaves or branches or twigs upon it; where it fell the bark was so dry that it fell off. It was not this branch that injured the plaintiff; but the falling of this branch broke another branch, which fell down and caused the injury of which plaintiff complains. This accident occurred in March, when snow was upon the ground and some snow was upon the trees. Whether the condition of this branch was such as to put the defendant upon notice, and require an inspection in the exercise of reasonable care, would seem to be a question for the jury to decide. A branch, although with bark upon it, which has no twigs and no branches, might be held by the jury to have been in such a condition as to give notice to the city in the exercise of reasonable inspection that such branch was rotten, and should be cut down before it caused injury to passers-by upon the street. The question was one of fact, and we think the judge was not authorized to decide as matter of law that there was no such condition as would give constructive notice to the city.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LYON and WOODWARD, JJ., concur. KELLOGG and HOWARD, JJ., dissent.

---

### CROCKETT v. STATE INS. FUND. (No. 241/156.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

MASTER AND SERVANT ☜250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—AWARD—EMPLOYER'S RIGHT OF APPEAL.

Workmen's Compensation Act (Consol. Laws, c. 67) § 53, provides that an employer, securing the payment of compensation by contributing premiums to the state fund, shall thereby become relieved from all liability for personal injuries or for death sustained by his employés, and the person entitled to compensation under the chapter shall have recourse therefor only to the state fund, and not to the employer. Section 23 provides that an award or decision shall be conclusive as against the state fund or between the parties, unless within 30 days after copy of such decision has been sent to the parties an appeal be taken to the Appellate Division of the Supreme Court of the Third Department, and that the Commission may also in its discretion, where the claim for compensation was not made against the state fund, on the application of either party certify to the

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appellate Division of the Supreme Court questions of law involved. An employer insured under the act by contributing to the state fund appealed from an award of the Commission for death of an employé. *Held,* that the act gives a right of appeal only to an employer privately insured, and that the appeal must be dismissed; the insured employer having absolute immunity from liability after insurance in the state fund, its interest through the fact that the risk, which it claimed not to be within the act, may be otherwise decided, thus affecting subsequent premiums to be paid, being too remote to authorize the appeal.

Woodward, J., dissenting.

Appeal from Workmen's Compensation Commission.

Proceeding under the Workmen's Compensation Law by Elizabeth K. Crockett, to obtain compensation for the death of her husband while in the employ of the International Railway Company, against the State Insurance Fund, insurer. Compensation was awarded, and the employer appeals. Appeal dismissed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Norton, Penney, Spring & Moore, of Buffalo (R. C. Vaughan, of Buffalo, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (Jeremiah F. Connor, of New York City, of counsel), for respondent.

SMITH, P. J. The employer was insured in the state insurance fund. The first point raised is that he has no right to appeal. By section 53 of the Compensation Act it is provided:

"An employer securing the payment of compensation by contributing premiums to the state fund shall thereby become relieved from all liability for personal injuries or death sustained by his employés, and the persons entitled to compensation under this chapter shall have recourse therefor only to the state fund and not to the employer. An employer shall not otherwise be relieved from the liability for compensation prescribed by this chapter except by the payment thereof by himself or his insurance carrier."

By section 23 of the act it is provided that an award or decision shall be final and conclusive—

"as against the state fund or between the parties, unless within thirty days after a copy of such award or decision has been sent to the parties, an appeal be taken to the Appellate Division of the Supreme Court of the Third Department. The Commission may also, in its discretion, where the claim for compensation was not made against the state fund, on the application of either party, certify to such Appellate Division of the Supreme Court, questions of law involved in its decision."

At least as to the certified questions a distinction seems to be made between those who insure in the state fund and those who insure with other insurance carriers. That distinction is probably based upon section 53 above quoted, which gives absolute immunity to the employer after insurance in the state fund, while such immunity is not given after insurance with any other carrier. It is true that the employer has a remote interest, even though insured in the state fund, to the end that the risk which he claims not to be within the act may be so decided as affecting any subsequent premiums which he must pay. That

interest, however, is too remote an interest to authorize his appeal in a matter where he is not otherwise aggrieved.

Further, the history of this legislation furnishes important light upon its proper interpretation. In the regular session of 1913 two compensation acts were before the Legislature. One was the Murtaugh-Jackson act, which provided for a system of state insurance, and all employés were required to contribute thereto. This was the only method established for giving security for the payment of compensation. In that act it was provided that the decisions of the Commission were final, except where a claim for compensation was rejected. In the Foley-Walker bill security for compensation was given by providing carriers. There was no system of state insurance, and an appeal was allowed to any party interested. The act as it was passed seems to have been a compromise between these two proposed laws, giving the right of appeal where the insurance is with a private carrier—as in the Foley-Walker bill—and withholding that right where the insurance is by the state insurance fund, as provided in the Murtaugh-Jackson bill.

I recommend, therefore, that the appeal be dismissed.

KELLOGG, LYON, and HOWARD, JJ., concur. WOODWARD, J., dissents.

---

VAN ANTWERP et al. v. STATE. (No. 261/84.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. TAXATION ☞543—RECOVERY OF ILLEGAL TAX—ACTION—PARTY PLAINTIFF —STATUTE.

　　A stock brokerage house sued, under Laws 1910, c. 186, a special refunding act, to recover from the state taxes on sales of stock illegally exacted, including stamps used by the firm for customers who were not indebted to it; the stamps having been charged to the customers, accounts rendered upon which the charge was made, and the charge assented to by the customers. The state objected that the plaintiff had no right to collect such claims under the act, which provided that the comptroller might make the refund upon proof that the stamps were "erroneously affixed, so as to cause loss to the person or persons making such claim," contending that the loss was a loss to the customer, and not to the broker, and that the customer alone might make claim therefor. *Held,* that the plaintiff could maintain its suit; it having been "aggrieved" by being obliged to pay the tax to the state by its liability to penalty if it had not paid, by its liability to customers for an erroneous payment, and by its being forced to run the chance of paying the tax and of being sued by its customers for failing to pay the tax and incurring the penalty therefor.

　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1006–1016; Dec. Dig. ☞543.]

2. TAXATION ☞543—RECOVERY OF ILLEGAL TAX—PARTY BENEFITED.

　　Where a stock brokerage house sued the state, under Laws 1910, c. 186, a special refunding act, to recover stamp taxes on sales of stock illegally exacted, the amount of the tax having been charged to customers and assented to by them, any recovery by the house would be for the benefit of the customers.

　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1006–1016; Dec. Dig. ☞543.]

　　Howard, J., dissenting.